# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN GARDLER, *Plaintiff*, | : : : | CIVIL ACTION |
| v. | : : | |
| WAL-MART STORES, INCORPORATED, et al., *Defendants*. | : : : : | NO. 18-4689 |

## MEMORANDUM OPINION

PRATTER, J.                                                                                                                                                       JUNE 11, 2019

John Gardler was shopping at a Wal-Mart[1] store in Springfield, Pennsylvania when he slipped and fell on a folded rug on the floor near the store's exit. Mr. Gardler sued several Wal-Mart entities and the store manager, Peter Jaroski, for negligence. According to Mr. Gardler, Mr. Jaroski made the decision to place the rug at the front of the store, and that decision precipitated Mr. Gardler's fall.

Both at-issue motions—Mr. Gardler's motion to remand and Defendants' motion to dismiss for failure to state a claim—turn at least in part on the adequacy of Mr. Gardler's negligence claim against Mr. Jaroski. Although the motion to remand is based on the alleged lack of diversity jurisdiction, Defendants counter that the lone non-diverse defendant, Mr. Jaroski, was fraudulently joined because Mr. Gardler has no legally cognizable claim against Mr. Jaroski. Mr. Gardler also makes one other argument in favor or remand: that Defendants' notice of removal

---

[1] The corporate defendants, as identified in the complaint, all use a hyphen in their name, e.g., "Wal-Mart Stores, Incorporated." For ease of reference, the Court will therefore use "Wal-Mart" throughout this opinion.

1

was untimely. The Court concludes that although removal was timely, Mr. Jaroski was properly joined and, hence, the case must be remanded to state court.

## BACKGROUND

On May 8, 2017, John Gardler was shopping at a Wal-Mart Supercenter in Springfield, Pennsylvania. As Mr. Gardler left the store, he tripped and fell over a "creased, partially folded, uneven and/or . . . defective rug on the floor near the exit[.]" Compl. ¶ 19. Mr. Gardler alleges that the Wal-Mart store manager, Peter Jaroski (1) was "directly charged with the responsibility of contacting and working with the Wal-Mart Defendants' vendors and suppliers who provided the above-mentioned floor rugs and floor mats at the subject premises," id. ¶ 33, and (2) "caus[ed] . . . a dangerous and hazardous condition to exist[.]" Id. 36f. According to Mr. Gardler, Mr. Jaroski also directed his employees to use the rug in question, even though he "knew or should have known of the dangerous condition pos[]ed by the defective floor rug." Id. ¶ 24f.

Mr. Jaroski and Mr. Gardler are both Pennsylvania residents. Id. ¶¶ 1, 6.

## DISCUSSION

Mr. Gardler seeks to remand this case to state court. He first argues that removal was untimely and therefore inappropriate. He then argues that he plausibly pleaded a claim against Mr. Jaroski—meaning Mr. Jaroski is properly joined and his inclusion in the case defeats the Court's diversity jurisdiction. Defendants contend that Mr. Jaroski is fraudulently joined because Mr. Gardler has no possible viable claims against Mr. Jaroski, and so Mr. Jaroski's citizenship does not affect the Court's diversity analysis.

Defendants, in addition to arguing that Mr. Jaroski is fraudulently joined, also seek dismissal of the claims against Mr. Jaroski for failure to state a claim. Because the Court determines that remand is necessary, this Court does not address the motion to dismiss, leaving it to the state court to address the substance of the defense argument.

2

## I. Timeliness of Removal

### A. Calculating the Period for Timely Removal

28 U.S.C. § 1446(b) lists the requirements for removal, including the period for timely filing a notice of removal:

> The notice of removal of a civil action or proceeding shall be filed **within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading** setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

§ 1446(b)(1) (emphasis added).

The Supreme Court has further clarified that "the 'service or otherwise' language . . . was not intended to bypass service as a starter for § 1446(b)'s clock." Murphy Bros. v. Michetti Pipe Stringing, 526 U.S. 344, 356 (1999) (quoting § 1446(b)(1)). But where, as here, there are multiple defendants, "[i]f defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." § 1446(b)(2)(C). Finally, as the Third Circuit Court of Appeals has observed in an unpublished opinion, "the removal period for a defendant does not begin to run until that defendant is properly served or until that defendant waives service." Di Loreto v. Costigan, 351 Fed. App'x. 747, 751 (3d Cir. 2009) (citing Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999)).

### B. When Defendants Were Served

Defendants do not dispute that Wal-Mart Stores East, LP was properly served on August 29, 2018. Instead, they argue that the other three defendants, Mr. Jaroski, Wal-Mart Stores Incorporated, and Wal-Mart Stores East, Inc., were never properly served and so § 1446(b)(1)'s clock for removal never started to run for those defendants.

3

### 1. Mr. Jaroski

Pennsylvania Rule of Civil Procedure 402 identifies the proper methods for service on individuals like Mr. Jaroski. The provision applicable here says that process may be served "at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof." Pa. R. C. P. 402(a)(2)(iii). That provision is not without restrictions, however: "Service at an office or usual place of business is subject to limitations, and is only appropriate when the person to be served has 'more proprietary responsibility and control over the business than that possessed by the average employee.'" Zimmerman Slate Roofing Specialists, LLC v. Seidner, No. 418 EDA 2013, 2014 WL 10979803, at *6 (Pa. Super. Ct. Mar. 31, 2014) (quoting Martin v. Gerner, 481 A.2d 903, 908 (Pa. Super. Ct. 1984)).

Here, Mr. Gardler executed service on Mr. Jaroski when the sheriff served Mr. Jaroski's co-worker, Joe Ostrander, who is the Asset Protection Manager at the individual Wal-Mart store where Mr. Jaroski works, at 400 South State Road, Springfield, PA. See Opp. to Mot. to Remand, Ex. B (Sheriff's Return of Service). Because Mr. Jaroski is not a principal of Wal-Mart, Defendants argue that he "did not possess the appropriate proprietary responsibility and control over Wal-Mart Stores East, L.P. to permit service on him at the Store." Opp. to Mot. to Remand at p. 19. Defendants distinguish cases where Pennsylvania courts, under previous Pennsylvania Rule 1009,[2] allowed in-office service on **shareholders**, **trustees**, or **officers** of a corporation. See Pincus v. Mutual Assurance Co., 321 A.2d 906, 910 (Pa. 1973) (defendant trustees may be served

---

[2] Rule 402 is the successor to prior Rule 1009(b)(2)(iii). The Superior Court of Pennsylvania has said that there is "no evidence that [Rule 402's] purpose is different from that of Rule 1009." Williams v. Office of Pub. Def. Cty. of Lehigh, 586 A.2d 924, 925 (1990). Each rule's purpose "is to assure that the defendant will actually get knowledge of the commencement of the action against him and of his duty to defend[.]" Id. "When Rule 1009(b)(2)(iii) refer[red] to an office or place of business 'of the defendant,' it require[d] that the defendant have more proprietary responsibility and control over the business than that possessed by the average employee." Id. (internal quotation and citation omitted).

4

at the corporation's main corporate office, even though they did not work there because trustees of a corporation possessed the requisite proprietary interest over the corporation); Slater v. Goldberg, 402 A.2d 1073 (Pa. Super. Ct. 1979) (defendants, sole shareholders and officers and directors of corporation, could be served at corporation's corporate office). These cases are inapposite, according to Defendants, because Mr. Jaroski is not an officer-level Wal-Mart employee. Instead, they argue this case is like Moses v. Home Depot Inc., No. 16-2400, 2017 WL 2784710 (D.N.J. June 27, 2017), in which the court determined that service could not be executed at a Home Depot location because the defendants, some of whom were store managers, were "mere employees of Home Depot." Id. at *5.

The record reflects that Mr. Jaroski was a store manager of an individual Wal-Mart location, making this case akin to Moses. Mr. Jaroski had no "proprietary responsibility" over Wal-Mart. Mr. Gardler does not respond to this argument in his papers, only arguing that Mr. Jaroski was served at the store where he worked. The Court concludes that service on Mr. Jaroski was improper, and so his clock for removal never began to run under § 1446(b). See Di Loreto, 351 Fed. App'x. at 751 ("[T]he removal period for a defendant does not begin to run until that defendant is properly served or until that defendant waives service.") (citation omitted); see also Hutton v. KDM Transp., Inc., No. 14-3264, 2014 WL 3353237, at *4 (E.D. Pa. July 9, 2014) (if a defendant "has not been properly served, the thirty-day period for filing a notice of removal has not begun."); Hall v. Hartford Life & Accident Ins. Co., No. 94-2328, 1994 WL 558807, at *2 (E.D. Pa. Oct. 12, 1994) (Because "process was never properly served, the thirty day removal period never began to run, and Defendant's removal to the United States District for the Eastern District of Pennsylvania was timely.").

5

## 2. Wal-Mart Stores, Incorporated

Pennsylvania Rule of Civil Procedure 424 identifies the proper methods of service on corporations like Wal-Mart, Incorporated. The Rule states that service on a corporation must be provided to one of the following:

(1) an executive officer, partner or trustee of the corporation or similar entity, or

(2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity, or

(3) an agent authorized by the corporation or similar entity in writing to receive service of process for it.

Pa. R. C. P. 424.

Here, service on Wal-Mart Stores, Incorporated—like service on Mr. Jaroski—was executed by serving Joe Ostrander, the Asset Protection Manager at the individual Wal-Mart store at 400 South State Road, Springfield, PA. See Opp. to Mot. to Remand, Ex. B (Sheriff's Return of Service). But Mr. Ostrander is not a Wal-Mart Stores, Incorporated executive and Wal-Mart Stores Incorporated did not operate the store where service occurred—the store was run by Wal-Mart Stores East, LP. Finally, Wal-Mart Stores, Incorporated's registered service agent is CT Corporation System.

As with Mr. Jaroski, service on Wal-Mart Stores, Incorporated was ineffective and did not start the removal clock. See Di Loreto, 351 Fed. App'x. at 751 ("[T]he removal period for a defendant does not begin to run until that defendant is properly served or until that defendant waives service."); Hutton, 2014 WL 3353237, at *4 (same); Hall, 1994 WL 558807, at *2 (same).[3]

---

[3] The defendants argue that another defendant, Wal-Mart Stores East, Inc., "is a non-existent entity which is therefore unable to be served." Opp. to Mot. to Remand at p. 20. Because service of the two other Defendants was improper, and because Wal-Mart Stores East, Inc. properly joined those defendants' timely notice of removal, the Court need not address how the inclusion of a nominal/non-existent party affects the timing of removal.

Removal was timely, therefore, because the time for removal never began to run for Mr. Jaroski and Wal-Mart Stores, Incorporated, and because the other defendants properly joined Mr. Jaroski's and Wal-Mart Stores, Incorporated's timely notice of removal, consistent with § 1446(b)(2)(C).[4]

## II. Whether Mr. Gardler Is a Non-Diverse Defendant or Was Fraudulently Joined

Because the Court determines that removal was executed in a timely fashion, the question becomes (1) whether Mr. Gardler fraudulently joined Mr. Jaroski and, if not, (2) whether Mr. Gardler stated a claim against Mr. Jaroski. Although there is some overlap between the fraudulent joinder analysis and the failure to state a claim analysis, the former requires a more exacting examination.[5] The Court addresses the requirements for fraudulent joinder, before determining that Mr. Jaroski was not fraudulently joined. The motion to remand is therefore granted and the motion to dismiss is deemed moot because the Court lacks subject matter jurisdiction to address it.

---

[4] As an alternative argument, the defendants argue that removal was timely because they could not have identified the amount in controversy when the case was first filed, and so the time period for removal did not begin until after the amount in controversy was ascertainable. Because the Court decides removal was timely based on Mr. Gardler's failure to serve two of the defendants, the Court need not discuss this alternative argument.

[5] "[T]he inquiry to determine fraudulent joinder is significantly less searching than that under Rule 12(b)(6). Dismissal for fraudulent joinder is appropriate only if the joinder was 'wholly insubstantial and frivolous.' '[I]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.'" PNC Bank v. AmerUs Life Ins. Co., No. 04-5015, 2005 WL 226075, at *1 (E.D. Pa. Jan. 31, 2005) (quoting Batoff v. State Farm, 977 F.2d 848, 852 (3d Cir. 1992)); see also Boomerang Recoveries, LLC v. Guy Carpenter & Co., LLC, 182 F. Supp. 3d 212, 218 (E.D. Pa. 2016) ("The fraudulent joinder inquiry is less probing than the standard for deciding a Rule 12(b)(6) motion to dismiss or a summary judgment motion.").

## A. Fraudulent Joinder Standard

When assessing diversity of citizenship, the citizenship of nominal or fraudulently joined parties does not factor in a court's calculation. "'[T]he 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy.'" Johnson v. SmithKline Beecham Corp., 724 F.3d 337, 358 (3d Cir. 2013) (citing Navarro Savings Ass'n v. Lee, 446 U.S. 458, 460 (1980)). As a result, "[t]he doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity." In re Briscoe, 448 F.3d 201, 216 (3d Cir. 2006). If a court determines that the joinder of a party was fraudulent, it must "disregard, for jurisdictional purposes, the citizenship of [the non-diverse defendant]" and retain subject matter jurisdiction. Id. (quotation omitted).

The removing party has a "heavy burden of persuasion" to prove that a plaintiff has fraudulently joined a party. Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (quotation and citation omitted). "The removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." Id. (quotations and citation omitted).

In Bancorp, Inc. v. Yaron, No. 14-7159, 2015 WL 4876330 (E.D. Pa. Aug. 14, 2015), this Court articulated a two-step test for fraudulent joinder. First, the Court "accept[s] as true all allegations" in the complaint, and "'if there is **even a possibility** that a state court would find that the complaint states a cause of action'" against the defendant in question, this portion of the test is satisfied. Id. at *2 (quoting Briscoe, 448 F.3d at 217) (emphasis added). Second, if the complaint passes the first test, the Court then asks whether the plaintiff "intends in good faith to prosecute the action" against the allegedly fraudulently joined defendant. Id. At this stage, the Court may "look beyond the pleadings 'to identify indicia of fraudulent joinder.'" Id. (quoting Briscoe, 448 F.3d at 219).

8

### B. Whether Mr. Jaroski Was Fraudulently Joined

Defendants do not appear to dispute that Mr. Gardler intends in good faith to prosecute the action against Mr. Jaroski. Instead, the only question is whether there is a possibility that the complaint states a cause of action against Mr. Jaroski. The Court determines that there is such a possibility, problematic though it may be, and so Mr. Jaroski is properly joined and the motion for remand is granted.

Defendants argue that the complaint is impermissibly based on a theory of Mr. Jaroski's **nonfeasance**, "the omission of an act which a person ought to do." Brindley v. Woodland Vill. Rest., Inc., 652 A.2d 865, 869 (Pa. Super. Ct. 1995). But under Pennsylvania negligence law, employees can only be liable for **misfeasance**, i.e., "the improper performance of an act." Id. ("[A] corporate officer can be held liable for 'misfeasance,' i.e., the improper performance of an act, but not for 'mere nonfeasance,' i.e., the omission of an act which a person ought to do.") (citation omitted). This theory—that employees are liable only for action but not inaction—is called the "participation theory" and applies to corporates officers as well as store managers and supervisors. See Aldorasi v. Crossroads Hosp. & Mgmt. Co., LLC, 344 F. Supp. 3d 814, 822 (E.D. Pa. 2018) (collecting cases for proposition that "Pennsylvania courts have routinely applied the [participation] theory to employees and other non-officer agents"). The Pennsylvania Supreme Court has said that a corporate employee is liable under the participation theory where "he specifically **directed** the particular act to be done or **participated**, or **cooperated** therein." Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983) (citation and quotation omitted, emphasis added); see also Jackson v. Burlington Coat Factory, No. 17-2459, 2017 WL 3534983, at *3 (E.D. Pa. Aug. 17, 2017) (quoting Wicks for same proposition).

There is a distinction between participation theory cases in which the at-issue employee merely knew about a risk and those in which the employee actually directed the creation of the

9

risk. This Court's decision in Aldorasi demonstrates the sort of insufficient allegations that sound only in nonfeasance. In Aldorasi, the plaintiff, Ms. Aldorasi, sued after she was struck by falling drywall from a hotel doorway. She alleged that the manager and director of engineering of the hotel "knew or should have known of the dangerous condition of the wall or ceiling immediately above the hotel's 17th Street exit and had a duty to properly maintain the hotel premises." Aldorasi, 344 F. Supp. 3d at 824. All of the specific allegations, however, were about the employees' **failure** to act. See id.[6] The Court determined that Ms. Aldorasi's claims against the hotel manager and director of engineering were not colorable, and therefore those defendants were fraudulently joined and the claims against them were dismissed. Id. at 825.[7]

By contrast, the Court's decision in Greenberg v. Macy's, No. 11-4132, 2011 WL 4336674 (E.D. Pa. Sept. 15, 2011), establishes that a plaintiff can state a claim by alleging that a defendant "wrongfully created or directed the creation of the 'dangerous and hazardous condition' that caused [p]laintiff's injury." Id. at *5 (emphasis added); see also Gaynor v. Marriott Hotel Servs., Inc., No. 13-3607, 2013 WL 4079652, at *4 (E.D. Pa. Aug. 13, 2013) (plaintiff stated claim based

---

[6]  The Court described the allegations as follows: "Defendants are alleged to have breached this duty solely through inaction. Specifically, Plaintiff alleges [Defendants] breached their duty by 'failing to maintain the subject premises in a safe and reasonable manner'; 'failing]to warn persons, such as Plaintiff, that the condition was a hazard'; 'failing to properly train, instruct and/or hire employees and/or third persons to monitor the conditions of the area where the accident occurred'; 'failing to establish appropriate policies and procedures to inspect the premises in a timely manner and discovery and/or correct the known or knowable unreasonable risks, including the hazard . . . which directly and proximately caused Plaintiff's injuries'; and 'failing to hire third party contractors to take appropriate actions to preclude the occurrence which caused this Plaintiff's injuries.'" Aldorasi, 344 F. Supp. 3d at 824.

[7]  Although the Court in Aldorasi determined that the non-diverse defendants were fraudulently joined, the Court also granted Ms. Aldorasi's request for leave to amend to rejoin the non-diverse defendants, based on more specific allegations. 344 F. Supp. 3d at 818. Because those amended allegations were sufficient to possibly state a claim, the Court then remanded under 28 U.S.C. § 1447(e). Id.

on allegation that hotel manager "caus[ed] and/or permit[ted] the defective condition to remain on the sidewalk.").

The complaint here includes allegations that arguably relate to both nonfeasance and misfeasance. Because it is undisputed that nonfeasance cannot support a cause of action, the allegations potentially sounding in misfeasance are the only ones relevant:

- ➤ Mr. Jaroski "was charged with the responsibility of managing and overseeing the maintenance, use and control of the floor rugs and floor mats that were placed at all entry/exit points throughout the subject premises for the safety of the Defendants' business invitees," Compl. ¶ 32;

- ➤ Mr. Jaroski "was the Wal-Mart Defendants' sole agent/employee who was directly charged with the responsibility of contacting and working with the Wal-Mart Defendants' vendors and suppliers who provided the above-mentioned floor rugs and floor mats at the subject premises," id. ¶ 33;

- ➤ Mr. Jaroski "had other agents/employees/servants of the Wal-Mart Defendants under his charge, and he directed them to continue using the defective floor rug which caused plaintiff's injuries," id. ¶ 35;

- ➤ Mr. Jaroski "was the only agent/employee of the Wal-Mart Defendants who would have been permitted to ensure replacement of the defective floor rug that caused plaintiff's injuries," id. ¶ 36;

- ➤ Mr. Jaroski "[c]ontinu[ed] to use a defective floor rug and caus[ed] it to continue to be and remain on the subject premises when [D]efendants knew or should have known of the dangerous condition posed by the defective floor rug," id. ¶ 37f;

- ➤ Mr. Jaroski "[c]aus[ed] and/or permit[ted] a dangerous and hazardous condition to exist when [he], as store manager, was the only agent/employee of the Wal-Mart Defendants who was charged with the responsibility of working with the store's floor mat suppliers and vendors," id. ¶ 37g; and

- ➤ Mr. Jaroski "[d]irect[ed] other agents/employees of the Wal-Mart Defendants in his charge to continue using the defective/dangerous floor mat." Id. ¶ 37k.

Drawing all inferences in Mr. Gardler's favor—and conscious of the forgiving standard for reviewing the allegations in the complaint in the context of fraudulent joinder—there is "a possibility" that a state court would find that the complaint states a cause of action. Unlike the defendants in Aldorasi, who merely "should have known" about the dangerous condition, the

11

complaint here states that Mr. Jaroski was responsible for **creating** the dangerous condition because Mr. Jaroski had the sole responsibility for rug placement: Mr. Jaroski **"[c]aus[ed] and/or permit[ted] a dangerous and hazardous condition to exist** when [he], as store manager, was the only agent/employee of the Wal-Mart Defendants who was charged with the responsibility of working with the store's floor mat suppliers and vendors." Id. ¶ 37g; compare with Gaynor, 2013 WL 4079652, at *4 (plaintiff stated claim based on allegation that hotel manager "caus[ed] and/or permit[ted] the defective condition to remain on the sidewalk."). Admittedly, the complaint could more clearly allege that Mr. Jaroski actually placed the rug. Nonetheless, given the strong presumption in favor of remand, any doubts the Court may have "should be resolved in favor of remand." Boyer, 913 F.2d at 111 (citation and quotation omitted).

Further underscoring the need for remand, it is unclear whether—as a matter of Pennsylvania law—Mr. Jaroski may be individually liable for **continuing** to direct that Wal-Mart use the allegedly defective rug. During oral argument, the Court asked counsel for the parties whether a defendant's decision to leave in place a dangerous condition could constitute misfeasance under the participation theory. Both parties submitted supplemental briefs and, although the answer to the Court's question is far from clear, that uncertainty further counsels in favor of remand.

The parties only identified one case that even indirectly addressed whether leaving in place the status quo may be misfeasance. In B&R Resources, LLC v. Department of Environmental Protection, 180 A.3d 812 (Pa. Commw. Ct. 2018), the court held that a corporate officer can be liable for a **statutory** violation based on the participation theory where the officer knowingly and intentionally directs employees to forebear from addressing a statutory violation. B&R Resources is not directly on point, therefore, because, as a court in this District has commented, B&R Resources distinguished between "tort law participation theory" and the participation theory "in

12

the context of a statutory violation." See Aldorasi, 344 F. Supp. 3d at 824 n.11 (discussing B&R Resources). Nonetheless, even given some ambiguity as to whether Pennsylvania state courts would apply B&R Resources to tort cases, that there is "a possibility that a state court would find that the complaint states a cause of action" means the Court must remand the action. Briscoe, 448 F.3d at 217.[8]

## CONCLUSION

There is a possibility that a state court could find that action sufficient to render Mr. Jaroski a "participant" in the at-issue negligence. Consequently, the Court cannot determine that Mr. Jaroski was fraudulently joined, and the motion to remand is granted. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[8] Because the Court does not have subject matter jurisdiction over this case, the Court does not address Defendants' motion to dismiss, including the Rule 12(b)(6) standard for failure to state a claim and whether Mr. Gardler's negligence allegations against Mr. Jaroski satisfy that standard.

13